**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| GREGORY WASHINGTON, JORDAN MILES, CURTIS LOGAN, ISAIAH WALKER, CONNELL WILSON, BLAKE BANKS, KEITH GREEN, MESIAH HOWARD, SHAKARI ORE, DAVID MITCHELL, MARIO JAMAL KING, and KRYSTAL HAMLETT, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, Officer MEGHAN CAROLINE GAY, Officer DAVID CHADWICK NANCE, Officer JASON GWINN, Lieutenant JENNINGS BUNCH, in their individual and official capacities, <br><br> Defendants. | **21-CV-00194** <br><br> **COMPLAINT** <br> **(Jury Trial Demanded)** |

NOW COMES Plaintiffs, demanding a jury trial and alleging the following against the Defendants:

## INTRODUCTION

1. Plaintiffs are eleven Black males[1] who were wrongfully arrested on fabricated heroin trafficking charges by the Raleigh Police Department.

2. In each case fake heroin was planted by Raleigh Police Officer Omar Abdullah with the knowledge of other individual officers.

3. Plaintiffs were falsely charged with heroin trafficking.

---

[1] Mario King was arrested on fabricated marijuana charges by Officer Abdullah. Mesiah Howard's partner, Krystal Hamlett, was also falsely arrested by RPD officers.

4. As a result of the false charges, they were held in jail on up to $500,000 bond and faced mandatory minimum sentences of up to 7.5 years in prison.

5. Plaintiffs served a combined approximately 2.5 years in jail before the charges against each of them were dismissed.

6. Plaintiffs bring this action for compensatory damages and punitive damages pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under North Carolina law.

## PARTIES

7. Plaintiff Gregory Washington is a resident of Wake County, North Carolina.

8. Plaintiff Jordan Miles is a resident of Wake County, North Carolina.

9. Plaintiff Isaiah Walker is a resident of Wake County, North Carolina.

10. Plaintiff Curtis Logan is a resident of Wake County, North Carolina.

11. Plaintiff Connell Wilson is a resident of Wake County, North Carolina.

12. Plaintiff Blake Banks is a resident of Wake County, North Carolina.

13. Plaintiff Keith Green is a resident of Wake County, North Carolina.

14. Plaintiff Mesiah Howard is a resident of Wake County, North Carolina.

15. Plaintiff Shakari Ore is a resident of Wake County, North Carolina.

16. Plaintiff David Mitchell is a resident of Wake County, North Carolina.

17. Plaintiff Mario Jamal King is a resident of Wake County, North Carolina.

18. Plaintiff Krystal Hamlett is a resident of Wake County, North Carolina.

19. Defendant City of Raleigh (the "City") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates the Raleigh Police Department ("RPD"). Employees of RPD are employees and agents of the

City, which bears legal responsibility under state law for negligent acts and omissions of RPD in the course of their employment. The City is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

20. Further, on information and belief, the City of Raleigh, at the time of the wrongful arrests, had waived governmental or sovereign immunity from the state law tort claims in this case pursuant to G.S. § 153A-435, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the City and its agents for any judgment against it or its agents named in this action.

21. All Individual Defendant RPD Officers, listed below, are entitled to indemnification by the City of Raleigh under North Carolina law for any liability arising from conduct described herein.

22. Officer Omar Abdullah is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

23. Sergeant William Rolfe is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

24. Officer Rishar Pierre Monroe is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

25. Officer Julien David Rattelade is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

26. Officer Meghan Caroline Gay is a police officer employed by the Raleigh Police Department, being sued in her official and individual capacity.

3

27. Officer David Chadwick Nance is a police officer employed by the Raleigh Police Department, being sued in her official and individual capacity.

28. Lieutenant Jennings Bunch is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

29. Officer Jason Gwinn is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

## JURISDICTION

30. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Plaintiffs' claims arise under law of the United States and seek redress of the deprivation under color of state law of rights guaranteed by the United States Constitution.

31. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

32. Venue is proper for the United States District Court for the Eastern District of North Carolina, pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where Defendants reside and maintain their relevant places of business, and where the actions complained of herein occurred.

## JURY DEMAND

33. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## FACTS

### RPD Recruits an Unreliable Confidential Informant

34. In the fall of 2018 RPD Officers arrested a target they suspected of selling cocaine.

35. This target was arrested using a confidential informant employed by the RPD.

36. The target sold the confidential informant crushed aspirin and claimed it was cocaine.

37. The target was arrested and charged with selling fake drugs.

38. After his arrest, RPD Officers David Chadwick Nance ("Nance") and Omar Abdullah ("Abdullah") recruited the target to work as a confidential informant with the RPD VICE squad.

39. Officers Nance and Abdullah nicknamed the confidential informant Aspirin[2] because he had sold them aspirin he claimed was cocaine.

40. On August 16, 2019, Aspirin was approved to work as a confidential informant for the RPD.

### Aspirin Starts out Making a few Small Level Crack Buys

41. Aspirin was homeless at the time of his arrest and agreed to be a confidential informant to work off his pending criminal charges and to make money.

42. He initially reported to Officers Nance and Abdullah and completed a few controlled drug buys arranged by the officers.

43. The officers provided him pre-marked United States currency.

44. And Aspirin bought crack valued at less than $100.

45. In late 2018 Officer Nance was transferred to a different unit with the RPD and Officer Abdullah began to supervise Aspirin alone.

### Officer Abdullah and Aspirin Conspire to Fabricate Heroin Trafficking Offenses

---

[2] Aspirin's true name is known to Plaintiffs' counsel. We have withheld his name from this Complaint because he served as a confidential informant but will disclose it to the Court upon request.

46. According to Officer Julien Rattelade, after Aspirin complained about his pay Abdullah told him he could make more money if he brought in bigger cases.

47. Officer Abdullah, Aspirin, and the other individual officers, conspired to fabricate Heroin charges against at least 15 individuals.

48. Aspirin with the knowledge and assistance of Abdullah hid fake heroin on his body before each alleged buy.

49. Abdullah claimed he searched Aspirin before each alleged buy and never located any contraband on his person.

50. Aspirin would shield his undercover camera, in violation of RPD procedure, with his jacket so the alleged buy would not be recorded.

51. After each controlled buy, Aspirin provided Abdullah with fake heroin allegedly purchased from Plaintiffs.

52. Abdullah, against RPD procedure, met alone with Aspirin, before and after buys.

53. Abdullah always paid Aspirin—also in violation of RPD procedure—without any other officers present.

54. RPD Officers Nance, Monroe, Rattelade and Gay informed Abdullah on numerous occasions that the alleged drugs were not heroin but brown sugar.

55. RPD officers informed Abdullah that the alleged drugs were not packaged the same way as heroin.

56. RPD officers occasionally conducted field tests on the fake heroin—immediately after the alleged buy from Plaintiffs—and each time it tested negative for a controlled substance.

57. Even faced with a negative field test results and other officers' observations that the alleged heroin was brown sugar, Abdullah still charged Plaintiffs with trafficking heroin.

6

58. Abdullah and other officers often failed to submit the alleged heroin for lab testing until weeks or months after Plaintiffs' incarceration.

59. In each case the City County Bureau of Identification ("CCBI") Lab reported that the alleged heroin tested negative and was not a controlled substance.

60. Defendants continued to use Aspirin as a CI even after he repeatedly planted fake heroin and fabricated heroin buys.

61. Defendants failed to, or severally delayed, informing the Wake County District Attorney ("DA") or the Court about the negative CCBI tests.

62. Defendants failed to inform the DA or the Court about the negative field tests.

63. Defendants failed to inform the DA or the Court that they believed the alleged heroin was actually brown sugar, or about the unreliability of Aspirin.

64. Through this scheme, Defendants fabricated heroin trafficking charges against Plaintiffs, and at least 5 other individuals, all people of color.

65. RPD officers including Monroe, reported Abdullah's ongoing scheme to Sergeant Rolfe and Lt. Bunch but neither supervisor intervened to stop the false arrests and prosecutions.

66. RPD Officers William Rolfe, Rishar Pierre Monroe, Julien David Rattelade, Meghan Caroline Gay, David Chadwick Nance, Jason Gwinn, and Lieutenant Jennings Bunch were aware of Abdullah's scheme and failed to intervene to prevent these false arrests and the wrongful incarceration of plaintiffs.

**Blake Banks**

67. On December 20, 2019, Blake Banks was arrested for allegedly selling heroin to the confidential informant Aspirin.

68. Banks was pulled over and arrested while he was driving in his car with his family present.

7

69. Abdullah falsely charged Banks with selling trafficking amounts of heroin.

70. Banks' bond was set at $150,000.

71. His family raised approximately $12,000 for his release.

72. Banks was released on approximately December 30, 2019.

73. On or about February of 2020, the City County Bureau of Identification ("CCBI") Lab reported that the alleged heroin tested negative and was not a controlled substance.

74. On June 30, 2020, all charges against Banks were dismissed.

75. Because of this arrest and incarceration Banks lost his employment as truck driver.

**Mesiah Howard and Krystal Hamlett**

76. On or about December 12, 2019, Krystal Hamlett was arrested and detained by RPD officers, including Abdullah.

77. Hamlett was arrested at her home in front of her three young children.

78. Hamlett's dog was taken to the pound by RPD officers.

79. RPD officers claimed they arrested her because they were looking for Mesiah Howard, her partner.

80. After approximately two hours of being held in a RPD squad car, Hamlett was released without any charges.

81. On or about March 10, 2019, Mesiah Howard discovered he had a warrant for his arrest and turned himself in at the RPD.

82. Howard was arrested for allegedly selling heroin to the confidential informant Aspirin.

83. Abdullah falsely claimed Howard sold Aspirin trafficking amounts of heroin.

84. Howard's bond was set at $500,000.

85. On or about February of 2020, the City County Bureau of Identification ("CCBI") Lab

reported that the alleged heroin tested negative and was not a controlled substance.

86. On March 31, 2020, Howard was released after his bond was reduced to $6,000.

87. On June 30, 2020, all charges against Howard were dismissed.

88. Because of this false arrest and incarceration Howard was unable to receive treatment for his lung cancer and suffered severe stomach pain.

**Curtis Logan**

89. On January 2, 2020, Curtis Logan was arrested for allegedly selling heroin to the confidential informant Aspirin.

90. Logan was driving his car with his two young children when he was arrested.

91. Abdullah falsely claimed that Logan sold Aspirin 20 grams of heroin for $400.

92. Officer Rishar Pierre Monroe stated that the street price of 20 grams of heroin would have been approximately $2000.

93. Officer Monroe conducted a field test on the alleged heroin, confirmed it was not a controlled substance, and reported these results to Abdullah.

94. Even with the negative field test, Officer Abdullah charged Logan with trafficking heroin.

95. Logan's bond was set at $500,000.

96. On or about February 17, 2020, the CCBI lab reported that the alleged heroin tested negative for a controlled substance.

97. On or about June 1, 2020, Logan was released from custody.

98. On or about July 1, 2020, all charges against him were dismissed.

**Jordan Miles**

99. On January 28, 2020, Jordan Miles was arrested for allegedly selling heroin to the confidential informant Aspirin.

100. Abdullah falsely claimed Miles sold Aspirin over 8 grams of heroin.

101. Miles was charged with trafficking heroin and his bond was set at $150,000.

102. On May 20, 2020, the CCBI lab reported that the alleged heroin tested negative for a controlled substance.

103. On June 23, 2020, Miles' bond was reduced to $5,000 and he was released from custody.

104. On June 30, 2020, all charges against Miles were dismissed.

105. Because of this false arrest and incarceration Miles lost his construction job and was separated from his three young children for almost 5 months.

**Gregory Washington**

106. On February 28, 2020, Gregory Washington was arrested for allegedly selling heroin to the confidential informant Aspirin.

107. Abdullah falsely claimed Washington sold Aspirin 6 grams of heroin.

108. Washington was charged with trafficking heroin and his bond was set at $500,000.

109. Washington had no criminal record, and after 5 days his bond was reduced to $300,000, an amount his family could pay, and he was released from custody.

110. The CCBI lab reported that the alleged heroin tested negative for a controlled substance.

111. On June 5, 2020, all charges against Washington were dismissed.

**Keith Green**

112. On March 17, 2020, Keith Green was arrested for allegedly selling heroin to the confidential informant Aspirin.

113. Abdullah falsely claimed Green sold Aspirin 8.5 grams of heroin.

114. Officers Gwinn and Rattelade were present during this arrest.

115. Gwinn stated the alleged heroin looked like brown sugar.

10

116. Rattelade conducted a field test, confirmed the alleged heroin tested negative for a controlled substance, and reported these results to Abdullah.

117. Even with the negative field test, Green was charged with trafficking heroin and his bond was set at $250,000.

118. The CCBI lab reported that the alleged heroin tested negative for a controlled substance.

119. On or about July 30, 2020, all charges against Green were dismissed and he was released from custody.

120. Green lost his employment for approximately 4 months because of this false arrest.

**Connell Wilson**

121. On May 15, 2020, Connell Wilson was arrested for allegedly selling heroin to the confidential informant Aspirin.

122. Abdullah falsely claimed Wilson sold Aspirin a trafficking amount of heroin.

123. Wilson was charged with trafficking heroin and his bond was set at an amount he could not pay.

124. The CCBI lab reported that the alleged heroin tested negative for a controlled substance.

125. On July 30, 2020, all charges against Wilson were dismissed and he was released from custody.

**David Mitchell**

126. On May 15, 2020, David Mitchell was arrested for allegedly selling heroin to the confidential informant Aspirin.

127. Abdullah falsely claimed Mitchell sold Aspirin a trafficking amount of heroin.

128. Mitchell was charged with trafficking heroin and his bond was set at an amount he could not pay.

129.  The CCBI lab reported that the alleged heroin tested negative for a controlled substance.

130.  On or about July 30, 2020, all charges against Mitchell were dismissed and he was released from custody.

**Shakari Ore**

131.  On April 9, 2020, Shakari Ore was arrested for allegedly selling heroin to the confidential informant Aspirin.

132.  Abudllah falsely claimed Ore sold Aspirin a trafficking amount of heroin.

133.  Ore was charged with trafficking heroin and his bond was set at an amount he could not pay.

134.  The CCBI lab reported that the alleged heroin tested negative for a controlled substance.

135.  On or about July 9, 2020, Ore was released from custody.

136.  On July 17, 2020, all charges against Ore were dismissed.

137.  Because of this false arrest and incarceration, Ore lost his employment and for approximately 3 months was unable to see his newborn daughter.

**Isaiah Walker**

138.  On April 8, 2020, Isaiah Walker was arrested for allegedly selling heroin to the confidential informant Aspirin.

139.  Abudllah falsely claimed Walker sold Aspirin a trafficking amount of heroin.

140.  Walker was charged with trafficking heroin and his bond was set at $300,000.

141.  The CCBI lab reported that the alleged heroin tested negative for a controlled substance.

142.  On or about July 9, 2020, Walker was released from custody.

143.  On July 17, 2020, all charges against Walker were dismissed.

**Mario Jamal King**

144.  On October 21, 2019, Mario King was arrested for allegedly selling marijuana to the

confidential informant Aspirin.

145. Abdullah falsely claimed King sold Aspirin marijuana.

146. King never met Aspirin.

147. King was held in jail for approximately one week before he could pay his bond.

148. On or about March, 2020, all charges against King were dismissed.

**Officer Abdullah is Suspended**

149. In September of 2020, Abdullah was placed on administrative leave pending the results of investigations by the State Bureau of Investigation and District Attorney's office.

## INJURIES AND DAMAGES

150. This action seeks damages on behalf of Plaintiffs for the loss of liberty, extraordinary emotional pain and suffering, and injuries to their person, that Plaintiffs were forced to endure as a consequence of Defendants' decidedly wrongful actions.

151. As a result of Plaintiffs' wrongful arrests and unjust imprisonment, despite their actual innocence of the crime, Plaintiffs were incarcerated for a combined period of over 2.5 years.

152. Plaintiffs have suffered, and continue to suffer, severe and ongoing damages, specifically including lost educational and professional opportunities, physical pain and injuries, inadequate medical care, serious psychological and emotional damage, loss of familial relationships, and loss of quality of life.

153. The acts and omissions of Defendants entitle Plaintiff to compensatory and punitive damages.

## FIRST CLAIM:

**Malicious Prosecution or Prosecution Without Probable Cause under 42 U.S.C § 1983
Against RPD Defendants**

13

154. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

155. At all times relevant to this action, Plaintiff had the right under the Fourth Amendment to not be prosecuted without probable cause. *See Durham v. Horner*, 690 F.3d 183 (4th Cir. 2012).[3]

156. Officers Abdullah, Rolfe, Monroe, Rattelade, Gay, Gwinn and Bunch, despite knowing that probable cause did not exist to arrest and prosecute Plaintiffs, intentionally, recklessly, and with malice caused Plaintiffs to be arrested, held on bail, and prosecuted.

157. Defendants knew that Plaintiffs had not sold heroin to the informant Aspirin.

158. Defendants knew that Aspirin, with the assistance of Abdullah, hid fake heroin on his person and later falsely claimed that he had purchased it from Plaintiffs.

159. Defendants knew that Aspirin would cover his camera when conducting alleged buys to hide the fact that he was not actually purchasing heroin.

160. Defendants knew that the alleged heroin was actually brown sugar.

161. Defendants, on numerous occasions, field tested the heroin, saw it tested negative for a controlled substance, yet still arrested and charged Plaintiffs with trafficking heroin.

162. Even after Aspirin had repeatedly provided fake heroin, which had tested negative in field tests and by the CCBI lab, Defendants continued to use him as a confidential informant resulting in additional prosecutions of innocent plaintiffs.

---

[3] *Durham v. Horner,* 690 F.3d 183, 188 (4th Cir. 2012) ("More specifically, 'we have required that [1] the defendant have 'seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor.' " *Burrell v. Virginia,* 395 F.3d 508, 514 (4th Cir.2005) (quoting *Brooks v. City of Winston–Salem,* 85 F.3d 178, 183–84 (4th Cir.1996)) (alterations and emphasis omitted)).

163.  Defendants failed to inform the DA or the Court about the negative field tests of the fake heroin.

164.  Defendants failed to timely send the alleged heroin to the CCBI lab and delayed reporting the results of the lab tests to the DA. Defendants never reported these results to the Court.

165.  Defendants failed to inform the DA or the Court about Aspirin's unreliability.

166.  Defendants failed to forward the exonerating video surveillance evidence to the DA or the Court.

167.  Defendants intentionally provided false or misleading information and made material omissions in their statements to the DA and the Court.[4]

168.  As a result of Defendants' acts Plaintiffs were arrested, charged and prosecuted without probable cause.

169.  Plaintiffs are all innocent.

170.  All of the charges against Plaintiffs were dismissed.

171.  As a direct and proximate result of the Defendants acts, Plaintiffs were wrongfully arrested and imprisoned, causing them to suffer the injuries and damages described above.

## SECOND CLAIM

### Fabrication of Evidence under 42 U.S.C § 1983
### Against RPD Defendants

---

[4] *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019) ("An officer who lies to secure a probable-cause determination can hardly be called reasonable. Likewise, where an officer provides misleading information to the prosecuting attorney or where probable cause is "plainly lacking," *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 419 (4th Cir. 2005), the procedural steps taken by an officer no longer afford a shield against a Fourth Amendment claim. This is because "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Manuel*, 137 S. Ct. at 918–19.).

15

172. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

173. Plaintiffs have a fundamental right to be free from fabrication of evidence pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. § 1983.[5]

174. Aspirin with the knowledge and assistance of Defendants hid fake heroin on his body before each alleged buy.

175. Officers Abdullah, Rolfe, Monroe, Rattelade, Gay and Gwinn and knew from field testing and observing the alleged heroin that it was fake.

176. Defendants knew that Plaintiffs had not sold heroin and that the alleged heroin trafficking charges were fabricated.

177. Despite knowing that the heroin was fake and that the trafficking allegations were fabricated, Defendants forwarded the false allegations and false information to the DA.

178. The individual Defendants fabrication of evidence violated Plaintiffs rights and caused them to be wrongfully arrested, charged, and incarcerated.

### THIRD CLAIM

### Failure to Intervene under 42 U.S.C § 1983
### Against RPD Defendants

179. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

---

[5] *Willis v. Blevins*, 966 F. Supp. 2d 646, 657 (E.D. Va. 2013) ("The Fourth Circuit has recognized that the fabrication of evidence by an officer "acting in an investigating capacity" constitutes a violation the Fourth Amendment. *Washington v. Wilmore,* 407 F.3d 274, 282 (4th Cir.2005).").

180. Defendants that were present for and observed the aforementioned unlawful conduct, had a duty to intervene and prevent such conduct and failed to intervene.

181. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.[6]

182. Officers Abdullah, Rolfe, Monroe, Rattelade, Gay, Nance and Gwinn knew from field testing and observing the alleged heroin that it was fake.

183. Defendants also knew that Plaintiffs had not sold heroin and that the alleged heroin trafficking charges were fabricated.

184. Defendants failed to intervene in the false arrest and continued prosecution of plaintiffs although they knew that these charges were fabricated and that these arrests occurred without probable cause.

185. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM:

## Malicious Prosecution under North Carolina State Law
## Against RPD Defendants

186. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

---

[6] *See Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) ("[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983."); *see also Velardo v. Lewko,* No. 3:18-CV-1885, 2019 WL 5095657, at *8 (M.D. Pa. Aug. 22, 2019) ("(1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene.").

187. By their conduct, as described herein, and acting under color of state law, Defendants are liable to Plaintiffs under North Carolina law for the violation of their constitutional right to be free from malicious prosecution.[7]

188. Officers Abdullah, Rolfe, Monroe, Rattelade, Gay, Gwinn and Bunch, despite knowing that probable cause did not exist to arrest and continue to prosecute Plaintiffs, intentionally, recklessly, and with malice caused Plaintiffs to be arrested, held on bail, and prosecuted.

189. Defendants knew that Plaintiffs had not sold heroin to the informant Aspirin.

190. Defendants knew that Aspirin, with the assistance of Abdullah, hid fake heroin on his person and later falsely claimed that he had purchased it from Plaintiffs.

---

[7] *See Braswell v. Medina*, 255 N.C. App. 217, 228–29, 805 S.E.2d 498, 507 (2017) ("As shown above, Braswell's complaint alleged facts showing that (1) the Officers initiated or participated in the criminal proceeding against him; (2) they lacked probable cause to believe he committed the offense []; (3) they acted with malice; and (4) the prosecution was terminated in Braswell's favor. " 'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant was motivated by personal spite and a desire for revenge or that defendant acted with reckless and wanton disregard for plaintiffs' rights." *Lopp v. Anderson*, —— N.C. App. ——, ——, 795 S.E.2d 770, 780 (2016) (citation and quotation marks omitted). Moreover, "[m]alice can be inferred from the want of probable cause alone." *Id.* at ——, 795 S.E.2d at 779 (citation and quotation marks omitted).

Here, Braswell has adequately alleged malice by pleading facts showing that the Officers not only lacked probable cause to believe he was guilty of the crime for which he was ultimately charged but also concealed and fabricated evidence in order to cause him to be prosecuted for that offense. Accordingly, Braswell has properly stated claims for malicious prosecution against the Rocky Mount Defendants under North Carolina law, and the trial court erred in dismissing these claims. *See Chidnese v. Chidnese*, 210 N.C. App. 299, 310, 708 S.E.2d 725, 734 (2011) ("Treating these allegations as true, these facts can be construed to state that [the defendant] procured a criminal prosecution against plaintiff with malice and without probable cause, and that the prosecution terminated favorably for the plaintiff, satisfying all of the elements of malicious prosecution." (citation omitted)).

191. Defendants failed to inform the DA or the Court about the negative field tests of the fake heroin.

192. The Defendants continued to aid the prosecution of Plaintiffs even after field testing and viewing surveillance footage which proved that Plaintiffs had not sold any heroin to Aspirin.

193. Defendants intentionally provided false or misleading information and made material omissions in their statements to the DA and the Court.

194. As a result of Defendants' acts Plaintiffs were arrested, charged and prosecuted without probable cause.

195. All of the charges against Plaintiffs were dismissed.

196. As a direct and proximate result of the Defendants acts, Plaintiffs were wrongfully arrested and imprisoned, causing them to suffer the injuries and damages described above.

## FIFTH CLAIM

### Unreasonably Prolonged Detention in violation of the
### Fourth Amendment and 42 U.S.C § 1983
### Against RPD Defendants

197. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein, and he further alleges as follows.

198. Officers Abdullah, Rolfe, Monroe, Rattelade, Gay, Gwinn and Bunch violated Plaintiffs' rights under the Fourth Amendment and Fourteenth Amendments.

199. The officers unnecessarily prolonged Plaintiffs' detention by delaying the submission of the alleged heroin to the CCBI.

200. The officers then failed to timely review and failed to timely forward the exonerating results to the DA or the Court.

201. Upon receiving the CCBI results the DA dismissed all charges against Plaintiffs.

202. This delay resulted in Plaintiffs' spending additional weeks and months in jail.

## SIXTH CLAIM

### Failure to Train and or Supervise Under 42 U.S.C § 1983
### Against Sergeant Rolfe and Lieutenant Bunch

203. Plaintiff repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

204. Sergeant Rolfe and Lieutenant Bunch failed to properly supervise RPD officers, despite having actual knowledge of the need for better and additional training and supervision.

205. Officers Monroe and Rattelade informed Defendants Rolfe and Bunch on numerous occasions about the fake heroin and fabricated charges by Abdullah.

206. Defendants Rolfe and Bunch failed to take any steps to correct Abdullah or prevent this unconstitutional activity from recurring.

207. Because of Defendants' inaction Plaintiffs were falsely arrested and held in jail.

208. The repeated and sustained failures of Defendants to supervise officers of the Raleigh Police Department constituted deliberate indifference to and reckless disregard for the rights and life of Plaintiffs and the public.

## SEVENTH CLAIM

### Equal Protection Violation Under 42 U.S.C § 1983
### Against Officer Abdullah

209. Plaintiff repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

20

210. Officer Abdullah violated the Equal Protection Clause of the Fourteenth Amendment when he targeted Plaintiffs for fabricated drug arrests.

211. Officer Abdullah, along with officers Rolfe, Monroe, Rattelade, Gay, Nance, and Gwinn falsely arrested and charged at least 15 black males with selling drugs.

212. Officer Abdullah, conspired with Aspirin to intentionally target only black males with these fabricated charges. [8]

213. Similarly situated white males were not targeted by Abdullah for these false charges and arrests.

214. Abdullah knew that Plaintiffs were innocent of the alleged charges yet continued to arrest them and then aid in their continued prosecution.

**EIGHTH CLAIM**

**Monell Liability Under 42 U.S.C § 1983**
**Against the City of Raleigh**

215. Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

216. The City of Raleigh maintains a policy of not field-testing alleged heroin.

217. On the rare occasions RPD officers do field test heroin the City has a policy not to immediately disclose these results to the DA or the Court.

---

[8] *Green v. Maroules*, 211 F. App'x 159, 162 (4th Cir. 2006) ("To state an equal protection claim, a plaintiff must plead sufficient facts to 'demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.' *Williams v. Hansen,* 326 F.3d 569, 576 (4th Cir.2003) (quoting *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.2001)). Here, Green alleged that she was racially profiled and, consequently, falsely arrested.")).

218. The failure to field test alleged heroin, or when tested, the failure to immediately turn the results over to the DA or the Court resulted in the false arrest and wrongful imprisonment of Plaintiffs.

219. Under the principles of municipal liability, the City and the RPD, owed a duty to the public at large and to Plaintiff to implement policies, procedures, customs, and practices sufficient to prevent, deter, and avoid conduct by subordinates that violate the constitutional rights of criminal suspects or defendants and of other members of the public.

220. However, the RPD and its designees, as policymakers for the City, knowingly and intentionally breached, or were deliberately indifferent to, this duty.

## NINTH CLAIM

## Permanent Injunctive Relief

221. Plaintiffs respectfully request at the conclusion of this action that the Court enter a permanent injunction – for the reasons set forth below:

222. Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

223. Plaintiffs request injunctive relief requiring Defendants field test any alleged controlled substance obtained as part of an arrest or investigation and that the results of this field test be immediately provided to the DA.

224. Plaintiffs have demonstrated a likelihood of success on the merits of each of their claims for relief.

225. By failing to field test heroin in every arrest and, even when tested, failing to immediately turn the results of field tests over the DA or the Court, Defendants are continuing to put Plaintiffs and the public at risk for false arrest and false imprisonment.

226. Irreparable harm will continue without an order from this Court enjoining Defendants' unconstitutional acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment for Plaintiff and order relief as follows:

227. Compensatory damages against all defendants, jointly and severally;

228. Punitive damages against the individual defendants, jointly and severally;

229. Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

230. Entry of permanent injunction on a finding that Defendants have violated Plaintiffs' rights under 42 U.S.C § 1983 and North Carolina state law;

231. That the Court grant any other and further relief it deems equitable and just.

Respectfully submitted, this the 26th day of April, 2021.

_____
Abraham Rubert-Schewel (N.C. Bar # 56863)
TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701
Tel: (919) 451-9216
Email: schewel@tinfulton.com

/s/ Emily Gladden
Emily D. Gladden
TIN FULTON WALKER & OWEN, PLLC
State Bar No.: 49224
204 N. Person Street
Raleigh, NC 27601
Telephone:     (919) 720-4201
Facsimile:     (919) 400-4516
Email:         Egladden@tinfulton.com

/s/ Micheal L. Littlejohn Jr.
Micheal L. Littlejohn Jr.
N.C. Bar No. 49353

23

Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com

24